**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x        **FOR PUBLICATION**
In re:                                                                              :
                                                                                        :
            DREIER LLP,                                                      :        Chapter 11
                                                                                        :        Case No. 09-15051 (SMB)
                                    Debtor.                              :
----------------------------------------------------------------x
SHEILA M. GOWAN, Chapter 11 Trustee                   :
of DREIER LLP,                                                          :
                                                                                        :
                                    Plaintiff,                              :
                                                                                        :        Adv. Pro. No. 10-03493 (MG)
                        v.                                                    :
                                                                                        :
AMARANTH LLC, *et al.*,                                       :
                                                                                        :
                                    Defendants.                        :
----------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER: (I) GRANTING IN PART**
**AND DENYING IN PART DEFENDANTS AMARANTH ADVISORS L.L.C.**
**AND AMARANTH PARTNERS LLC MOTION TO DISMISS; AND (II) GRANTING**
**DEFENDANT AMARANTH LLC'S MOTION TO DISMISS**

*A P P E A R A N C E S :*

DIAMOND McCARTHY LLP
*Attorneys for Sheila M. Gowan, Chapter 11 Trustee for Dreier LLP*
620 Eighth Avenue, 39th Floor
New York, NY 10018
By:    Howard D. Ressler, Esq.

-and-

1201 Elm Street, 34th Floor
Dallas, TX 75270
By:    J. Benjamin King, Esq. (argued)

-and-

909 Fannin Street
Suite 1500
Houston, TX 77010
By:    Stephen T. Loden, Esq.

DAVIS POLK & WARDWELL LLP
*Attorneys for Defendant Amaranth LLC*
450 Lexington Avenue
New York, NY 10017
By:    Amelia T.R. Starr, Esq. (argued)
       James I. McClammy, Esq.


WINSTON & STRAWN LLP
*Attorneys for Defendants Amaranth Advisors L.L.C. and Amaranth Partners LLC*
200 Park Avenue
New York, NY 10166
By:    Steven M. Schwartz, Esq. (argued)
       Samuel S. Kohn, Esq.


UNITED STATES DEPARTMENT OF JUSTICE
United States Attorney's Office
One St. Andrew's Place
New York, NY 10007
By:    Matthew L. Schwartz, Esq. (argued)


KLESTADT & WINTERS, LLP
*Attorneys for Official Committee of Unsecured Creditors*
570 Seventh Avenue
17th Floor
New York, NY 10018
By:    Tracy L. Klestadt, Esq. (argued)
       Brendan M. Scott, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are two motions to dismiss filed by Amaranth Partners LLC ("Amaranth

Partners") and Amaranth Advisors L.L.C. ("Amaranth Advisors"), on the one hand, and

Amaranth LLC (together with Amaranth Partners and Amaranth Advisors, the "Defendants"), on

the other hand, asserting that the complaint filed against them fails to state a claim upon which

relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), made

applicable by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012.  Pursuant to the

intentional and constructive fraudulent conveyance provisions of various sections of New York

Debtor and Creditor Law[1] (the "NYDCL"), the chapter 11 trustee, Sheila Gowan ("Gowan" or

the "Trustee") seeks to avoid and recover prepetition transfers by Dreier LLP to the Defendants

in the course of the Ponzi scheme perpetrated by Marc Dreier.[2]  Because the transfers occurred

outside the two-year look-back provision for fraudulent conveyances under the Bankruptcy

Code, the Trustee brought this action against the Defendants under the NYDCL with its six-year

look-back period.  N.Y. C.P.L.R. § 213(8) (McKinney 2011).  In total, the Trustee seeks the

avoidance and recovery of $28,150,479 from the Defendants to the Dreier LLP estate for

distribution to creditors.

        This opinion is one of three issued today resolving motions to dismiss in similar

adversary proceedings commenced by the Trustee against hedge funds that purchased bogus,

forged promissory notes (the "Solow Note" or "Notes" or "Solow Notes").[3]  The motions to

dismiss in all three cases raised many of the same issues; as a result, briefing and argument in the

cases was coordinated.  The Court's opinion in *Gowan v. The Patriot Group, LLC (In re Dreier*

*LLP)*, Adv. Pro. No. 10-03524 (MG) (Bankr. S.D.N.Y. June 16, 2011) (the "*Patriot Group*

Opinion"), resolves two potentially case-dispositive issues raised in all three cases.  The *Patriot*

*Group* Opinion also sets out the principles that apply to the state and federal actual and

---

[1]        N.Y. Debt. & Cred. Law § 270 *et seq.* (McKinney 2011).

[2]        The complaint also asserts a claim for equitable subordination against the Defendants pursuant to section
510(c) of the Code.  11 U.S.C. § 510(c) (" Notwithstanding subsections (a) and (b) of this section, after notice and a
hearing, the court may—(1) under principles of equitable subordination, subordinate for purposes of distribution all
or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of
another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate.")

[3]        *Gowan v. Novator Credit Management (In re Dreier LLP)*, Adv. Pro. No. 10-04278 (MG), ECF Doc. # 37
(Bankr. S.D.N.Y. June 16, 2011); *Gowan v. The Patriot Group, LLC (In re Dreier LLP)*, Adv. Pro. No. 10-03524
(MG), ECF Doc. # 46 (Bankr. S.D.N.Y. June 16, 2011).

constructive fraudulent transfer claims.  Rather than repeating the lengthy analyses of these issues in this opinion, the discussion in *Patriot Group* Opinion is incorporated by reference and familiarity with the *Patriot Group* Opinion is assumed.  As to the two potentially case-dispositive issues—(i) whether the Preliminary Forfeiture Order entered in the criminal case against Marc Dreier divested the Dreier LLP estate of any rights to the funds sought to be avoided and recovered, and (ii) whether the funds that are the subject of the avoidance actions were held in trust such that they did not form part of the Dreier LLP bankruptcy estate—the Court concludes that motions to dismiss are denied.

Specific to the Defendants here, the Court concludes that as to Amaranth Partners, the motion to dismiss is granted with prejudice as to the constructive fraudulent transfer claims brought under NYDCL §§ 273, 274 and 275 solely with respect to the repayment of principal, and denied as to the payments received in excess of principal.  Amaranth Partners' motion to dismiss is denied as to the actual fraudulent transfer claims brought under NYDCL §§ 276 and 276-a.  The claim for equitable subordination is dismissed without prejudice.

With regard to the claims against Amaranth Advisors as the entity for whose benefit the transfers were made, the complaint is dismissed with leave to amend the complaint within thirty days.  With regard to the claims against Amaranth LLC as a subsequent transferee, the complaint is likewise dismissed with leave to amend the complaint within thirty days.

## I.    BACKGROUND

The Trustee filed this adversary proceeding against the Defendants seeking avoidance and recovery of certain transfers made from Dreier LLP to the Defendants during the course of Marc Dreier's Ponzi scheme.  The Trustee seeks avoidance of the transfers from each defendant on different theories of liability: as to Amaranth Partners, the Trustee seeks to avoid and recover

the transfers as the initial transferee; as to Amaranth Advisors, the Trustee seeks to avoid and recover the transfers as the entity for whose benefit the transfers were made; and as to Amaranth LLC, the Trustee seeks to avoid and recover the transfers as the subsequent transferee of the transfers. *See* 11 U.S.C. § 550(a).[4]

### A.    Allegations Against Defendants

The Trustee filed the First Amended Complaint against all Defendants on October 19, 2010 (the "Complaint") seeking avoidance and recovery of the transfers made by Dreier LLP to Amaranth Partners totaling $28,150,479 in the course of Dreier's Ponzi scheme to become available for distribution to creditors under the actual and constructive fraudulent conveyance provisions of the NYDCL.[5]  The Defendants filed two separate motions to dismiss the Complaint—one motion on behalf of Amaranth LLC, and one motion on behalf of Amaranth Partners and Amaranth Advisors.  (ECF Doc. #s 18, 19, 21, 22.).  This opinion resolves both motions.

### 1.    First Amended Complaint

The Complaint asserts the following claims against all of the Defendants:

---

[4]    Section 550 of the Bankruptcy Code, entitled "Liability of transferee of avoided transfer" provides as follows:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550.

[5]    The Trustee filed an initial complaint against Defendants on August 9, 2010, and Defendants filed initial motions to dismiss on September 28, 2010.  (ECF Doc. #s 1, 7–9, 12, 13.)

| Count No. | Allegation |
|:---:|:---|
| I | New York Law Fraudulent Conveyance – 11 U.S.C. §§ 544 and 550 and NYDCL §§ 276, 276-a, 278 and 279 |
| II | New York Law Fraudulent Conveyance – 11 U.S.C. §§ 544 and 550 and NYDCL §§ 273, 278 and 279 |
| III | New York Law Fraudulent Conveyance – 11 U.S.C. §§ 544 and 550 and NYDCL §§ 274, 278 and 279 |
| IV | New York Law Fraudulent Conveyance – 11 U.S.C. §§ 544 and 550 and NYDCL §§ 275, 278 and 279 |
| V | Unjust Enrichment |
| VI | Equitable Subordination – 11 U.S.C. § 510(c) |

At the hearing on the motions to dismiss on April 5, 2011 (the "Hearing"), counsel for the Trustee withdrew Count V, unjust enrichment, against the Defendants.  Transcript of H'rg 149:17–21, Apr. 5, 2011, ECF Doc. # 52 ("Your Honor had asked before the break whether or not we were going to withdraw the unjust enrichment claim against Amaranth, and we've decided that we will withdraw that claim, so that will not be up before Your Honor today, which may help shorten the proceedings a smidge.").

## 2.    Amaranth's Involvement in the Fraud

On November 16, 2004, Amaranth Partners executed documents to invest $25 million in a Solow Note paying interest to Amaranth Partners at 8% on a quarterly basis.  (Compl. ¶ 35.) Amaranth Partners received four separate interest payments in 2005 of approximately $500,000 each, totaling $2,005,497.  (*Id.* ¶ 38–41.)  On November 16, 2005, Amaranth Partners agreed to extend the term of the Solow Note for ninety days, with an increased interest rate of 9%.  (*Id.* ¶ 46.)  Thereafter, on February 16, 2006, Amaranth Partners further extended the Note for an additional forty-five days at an increased interest rate of 12%.  (*Id.* ¶ 48, 50.)  Also on February 16, 2006, Amaranth Partners received a transfer of $750,000 from the 5966 Account, representing the first payment of interest due under the Note that matured in November 2005, as

6

modified by the February 2006 extension.  (*Id.* ¶ 51.)  On April 1, 2006, Amaranth Partners

received transfers of $395,000 from the 5966 Account, representing interest due under the terms

of the February 2006 Note and $25,000,000, representing the return of principal initially invested

on November 16, 2004.  (*Id.* ¶ 52.)  In addition to the repayment of all principal, Amaranth

Partners received a total of $3,150,479 of interest, alleged to be "profit" to Amaranth Partners.

(*Id.* ¶ 58.)  Accordingly, Amaranth Partners is a "net winner," having received repayment in full

of its principal investment plus interest.

      The Complaint alleges that certain elements of these transactions should have raised "red

flags" with each of the defendants that are the subject of the Trustee's avoidance actions.  The

Trustee alleges the following suspicious circumstances: (1) Solow's use of outside litigation

counsel, Marc Dreier, to raise capital; (2) Solow's robust financial condition at the time of the

purported investments; (3) the comparatively high interest rates associated with the Solow Notes;

(4) the "amateurish" financial statements of Solow provided to the Note investors by Dreier; (5)

certain provisions of the "Term Loan Agreements" prohibiting Note investors from contacting

Solow; and (6) the use of a Dreier LLP attorney trust account to complete the transaction.  (*Id.* ¶

16–25.)

      Specific to the Defendants, the Complaint alleges they should have known that something

was amiss based on their dealing with a "known" fraudster, Kosta Kovachev ("Kovachev"), who

was brokering the deal with Amaranth.  (*Id.* ¶ 26–30.)  At the same time that Kovachev was

brokering the Notes to Amaranth, Kovachev was also defending a securities fraud complaint

brought by the Securities Exchange Commission (the "SEC").  (*Id.* ¶ 28.)  According to the SEC

complaint, Kovachev was accused of participating in a $28 million "boiler room" Ponzi scheme

that marketed fake timeshares to the elderly.  (*Id.*)  Also according to the SEC complaint,

Kovachev prepared forged documents, but invoked his Fifth Amendment right against self-incrimination and refused to answer the SEC's questions. (*Id.*) The information about Kovachev was public, available on the SEC's website and Amaranth had actual notice of the Kovachev SEC action upon receipt of a November 5, 2004 memorandum from Kroll Associates to Amaranth Advisors that stated that Kovachev was a former client of Dreier's who had "been named in a civil complaint by the SEC for his role in a $28 million Ponzi scheme." (*Id.* ¶ 29–30.)

The Complaint alleges additional evidence should have put Amaranth on notice of the fraud, including the frequency of contact between Amaranth and Kovachev. Kovachev contacted Adrian Kingshott ("Kingshott"), an employee of Amaranth Advisors, ten times over the two-day period from November 3-4, 2004 regarding Defendants' participation in the Note Fraud. (*Id.* ¶ 32.) Indeed, Kingshott wrote to another employee that he detected a "certain urgency" on the part of Dreier to get the deal done because Kovachev called him "5 times a day for the last 2 days." (*Id.* ¶ 34.)

The Trustee also points to certain internal statements regarding the financial condition of Solow and the commercial unreasonableness of the transaction from Solow's perspective. (*Id.* ¶ 33–37.) For example, the Trustee points to statements made by the head of Amaranth Advisors and another group of hedge funds stating that it was unlikely that Solow would issue notes with such high interest rates. (*Id.* ¶ 36.) The Trustee asserts that Defendants failed to make reasonable inquiries about Solow's financial condition that would have revealed the fraudulent nature of the transaction. (*Id.* ¶ 37.) Finally, the Trustee points to several internal emails and conversations between Defendants' employees that, according to the Trustee, suggest that Defendants' employees were concerned with the legality of the transaction, including comments

regarding a request for another extension and whether Defendants were still on schedule to get paid.  (*Id.* ¶ 54–57.)

### 3.    Relationship Between Amaranth Entities

The Trustee asserts liability of each Defendant on a different theory.  Amaranth Advisors is an investment manager that manages Amaranth LLC's investment portfolio and Amaranth Partners' trading activity.  (*Id.* ¶ 7.)  Amaranth Partners is a "feeder fund"; it raised capital, substantially all of it invested in Amaranth LLC.  (*Id.* ¶ 8, 64.)  Amaranth LLC is the "master fund" of the Amaranth group.  (*Id.* ¶ 9.)

Amaranth Partners received the transfers from Dreier LLP that the Trustee seeks to avoid as the initial transferee.  (*Id.* ¶ 8.)  According to the Trustee, Amaranth Advisors directed Amaranth Partners' participation in the transactions with Solow and benefited from the transfers from Dreier LLP to Amaranth Partners.  (*Id.* ¶ 10.)  As further evidence of the relationship between Amaranth Partners and Amaranth Advisors, the Complaint states that:

> Amaranth Advisors was the agent of Amaranth Partners and
> Amaranth LLC pursuant to "Advisory Agreement" that broadly
> gave Amaranth Advisors the authority to make trading and
> investment decisions on behalf of Amaranth Partners and
> Amaranth LLC . . . . Amaranth Advisors directed the "passive
> pool's" trading and investments, including Amaranth Partners'
> investments in the Note Fraud.

(*Id.* ¶ 66.)  Amaranth Advisors signed the transaction documents on Amaranth Partners' behalf, and wire instructions were addressed to "Amaranth Partners LLC, c/o Amaranth Advisors, L.L.C."  (*Id.* ¶ 64.)  Amaranth Advisors also purported to benefit from the transfers to Amaranth Partners because in previous litigation, Amaranth Partners and Amaranth LLC stated that their businesses were so intertwined that misconduct harming LLC "directly interfered with Amaranth Advisors' business."  (*Id.* ¶ 65.)  The crux of the Trustee's argument is that Amaranth Advisors

9

"arranged for the transfers to happen" and directly benefited from the transfers from Dreier LLP to Amaranth Partners.

The Trustee asserts liability of Amaranth LLC as a subsequent transferee. The Complaint alleges that "[o]n information and belief, Amaranth Partners, at Amaranth Advisors' direction, transferred the proceeds of its transfers from [Dreier LLP] to Amaranth LLC" and "it is likely that Amaranth Partners invested the money DLLP transferred to it pursuant to the Note Fraud to Amaranth LLC." (*Id.* ¶¶ 10, 67.)

## II.    DISCUSSION

### A.    Standard on a Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (citations and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Furthermore, a complaint that does not "plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior" that does not "suggest an unlawful agreement" must be dismissed. *Id.* at 1950 (citation omitted).

Following the Supreme Court's decision in *Iqbal*, courts use a two-prong approach when considering a motion to dismiss. *See, e.g.*, *McHale v. Citibank, N.A. (In re The 1031 Tax*

10

*Group*), 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009); *Weston v. Optima Commc'ns Sys., Inc.*,

No. 09 Civ. 3732(DC), 2009 WL 3200653, at *2 (S.D.N.Y. Oct. 7, 2009) (Chin, J.)

(acknowledging a "two-pronged" approach to deciding motions to dismiss); *S. Ill. Laborers' and*

*Employers Health and Welfare Fund v. Pfizer, Inc.*, No. 08 CV 5175(KMW), 2009 WL

3151807, at *3 (S.D.N.Y. Sept. 30, 2009) (Wood, J.) (same); *Inst. for Dev. of Earth Awareness v.*

*People for the Ethical Treatment of Animals*, No. 08 Civ. 6195(PKC), 2009 WL 2850230, at *3

(S.D.N.Y. Aug. 28, 2009) (Castel, J.) (same).  First, the court must accept all factual allegations

in the complaint as true, discounting legal conclusions clothed in the factual garb.  *Kiobel v.*

*Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must

"assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true")

(citing *Iqbal*, 129 S.Ct. at 1949–50); *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir.

2009) (stating that the court must "accept as true all of the factual allegations set out in the

plaintiff's complaint, draw inferences from those allegations in the light most favorable to the

plaintiff, and construe the complaint liberally") (quoting *Gregory v. Daly*, 243 F.3d 687, 691 (2d

Cir. 2001)); *Boykin v. Keycorp*, 521 F.3d 202, 204 (2d Cir. 2008) ("In reviewing a motion to

dismiss, we accept the allegations in the complaint as true.") (citation omitted); *Spool v. World*

*Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) ("Although we construe the

pleadings liberally, bald assertions and conclusions of law will not suffice.") (internal quotation

marks omitted).  Second, the court must determine if these well-pleaded factual allegations state

a "plausible claim for relief."  *Iqbal*, 129 S.Ct. at 1951 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at

1950 (citation omitted).  A claim is plausible when the factual allegations permit "the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at

1949 (citation omitted). Meeting the plausibility standard requires a complaint to plead facts that

show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation

omitted). A complaint that only pleads facts that are "merely consistent with a defendant's

liability" does not meet the plausibility requirement. *Id.* (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 557 (2007) (internal quotation marks omitted)). "A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

(quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)). "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

(citation omitted). "The pleadings must create the possibility of a right to relief that is more than

speculative." *Spool*, 520 F.3d at 183 (citation omitted).

Courts deciding motions to dismiss must draw all reasonable inferences in favor of the

nonmoving party and must limit their review to facts and allegations contained in (1) the

complaint, (2) documents either incorporated into the complaint by reference or attached as

exhibits, and (3) matters of which the court may take judicial notice. *Blue Tree Hotels Inv.*

*(Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)

(citation omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *DDR*

*Const. Servs., Inc. v. Siemens Indus., Inc.*, No. 09 CIV. 09605 RJH, 2011 WL 982049, at *1

(S.D.N.Y. Mar. 22, 2011). Courts also consider documents not attached to the complaint or

incorporated by reference, but "upon which the complaint *solely* relies and which *[are] integral*

*to the complaint*." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks

omitted) (quoting *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)); *see*

*also Kalin v. Xanboo, Inc.*, No. 04 Civ. 5931(RJS), 2009 WL 928279, at *8 (S.D.N.Y. Mar. 30,

2009) (Sullivan, J.); *Grubin v. Rattet (In re Food Mgmt. Grp.)*, 380 B.R. 677, 690 (Bankr.

S.D.N.Y. 2008) ("A court may even consider a document that has not been incorporated by

reference where the complaint relies heavily upon its terms and effect, which renders the

document integral to the complaint.") (internal quotation marks omitted) (quoting *Buena Vista*

*Home Entm't, Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp.)*, 374 B.R. 113, 119

(Bankr. S.D.N.Y. 2007), *aff'd*, 386 B.R. 428 (S.D.N.Y. 2008), *aff'd*, 318 Fed. App'x. 36 (2d Cir.

2009)).

When fraud is pleaded, Rule 9(b) requires the plaintiff to plead fraud with particularity.

*See Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987).  Pursuant to

Rule 9(b) "in alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's

mind may be alleged generally."  Fed R. Civ. P. 9(b).  The Second Circuit has stated that the

complaint must: "(1) detail the statements (or omissions) that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were

made, and (4) explain why the statements (or omissions) were fraudulent."  *Harsco Corp. v.*

*Segui*, 91 F.3d 337, 347 (2d Cir. 1996) (citations omitted).  Although the second part of Rule

9(b) permits scienter to be pleaded generally, the pleader must "allege facts that give rise to a

strong inference of fraudulent intent."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d

Cir. 1994) (citation omitted); *see also The Responsible Pers. of Musicland Holding Corp. v. Best*

*Buy Co., Inc. (In re Musicland Holding Corp.)*, 398 B.R. 761, 773 (Bankr. S.D.N.Y. 2008).

Plaintiffs may not allege "fraud by hindsight."  *See Shields*, 25 F.3d at 1129 (quoting *Denny v.*

*Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.)).  A strong inference of fraudulent intent

"may be established either (a) by alleging facts to show that defendants had both motive and

13

opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 1128; *accord ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). The purpose of Rule 9(b) is to further three goals: "(1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits." *DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (citation omitted).

For claims brought by a bankruptcy trustee, "courts take a more liberal view when examining allegations of actual fraud . . . in the context of a fraudulent conveyance, since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge." *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) (internal quotation marks omitted) (quoting *Picard v. Taylor (In re Park S. Secs., LLC)*, 326 B.R. 505, 517–18 (S.D.N.Y. 2005)); *Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999) (citation omitted). Accordingly, courts have recognized that "allegations of circumstantial evidence are sufficient to establish fraudulent intent," *Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626, 643 (Bankr. S.D.N.Y. 2009), because "the trustee's lack of personal knowledge is compounded with complicated issues and transactions which extend over lengthy periods of time." *Stratton Oakmont*, 234 B.R. at 310 (citation omitted). However, "relaxing the particularity requirement in bankruptcy cases should not be construed to eliminate that requirement altogether." *Id.* at 311 (citation omitted).

Rule 9(b) imposes additional limitations. First, a pleader cannot allege fraud based upon information and belief unless the facts are "peculiarly within the opposing party's knowledge." *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S.

976 (1975), *overruled on other grounds by Virginia Bankshares, Inc. v. Sandberg*, 501 U.S.

1083, 1100 n.9 (1991); *accord Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655,

664 (2d Cir. 1997) (citation omitted).  In those cases, the pleader must nonetheless allege facts

upon which the belief is founded.  *Campaniello Imps.*, 117 F.3d at 664.  In addition, "group

pleading is generally forbidden because each defendant is entitled to know what he is accused of

doing."  *O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 257–

58 (Bankr. S.D.N.Y. 2008) (citation omitted); *see also DiVittorio*, 822 F.2d at 1247 ("Where

multiple defendants are asked to respond to allegations of fraud, the complaint should inform

each defendant of the nature of his alleged participation in the fraud.").

### B.    Claims Brought Against Amaranth Partners

As to Amaranth Partners, the Trustee seeks avoidance and recovery of the transfers from

Dreier LLP to Amaranth Partners as the initial transferee.  11 U.S.C. § 550(a)(1).[6]  Because the

transfers to Amaranth Partners took place more than two years prior to the petition date,

December 16, 2008, the Trustee seeks avoidance on theories of actual fraud under NYDCL §

276, and seeks recovery of attorneys' fees under NYDCL § 276-a (Count I), and constructive

fraud under NYDCL §§ 273, 274 and 275 (Counts II – IV).  The Trustee also seeks equitable

subordination of any future claim filed by the Defendants under 11 U.S.C. § 510(c) (Count VI).

The Trustee has withdrawn her claim for unjust enrichment (Count V).

### 1.    Claims For Actual Fraudulent Conveyance

Count I seeks avoidance and recovery of the transfers made to Amaranth Partners as

actual fraudulent conveyances under NYDCL § 276.  Section 276 of the NYDCL allows the

---

[6]    The parties do not dispute that the initial transfers were made from Dreier LLP to Amaranth Partners.

Trustee to avoid any "conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors."  NYDCL § 276. Count I also seeks recovery of attorneys' fees incurred by the Trustee in seeking recovery of such transfers under NYDCL § 276-a.

As explained in the *Patriot Group* Opinion, to establish a claim for actual fraudulent conveyance under NYDCL § 276, the Trustee must establish the actual fraudulent intent of the transferor, and need not plead the actual fraudulent intent of the transferee.  *See Patriot Group* Opinion at section II.D.2.  The transferor's actual fraudulent intent has been established by virtue of the Ponzi scheme presumption.  *See Patriot Group* Opinion at section II.D.1.  Accordingly, the motion to dismiss as it relates to Count I, actual fraudulent conveyance, is denied as to Amaranth Partners.  The motion to dismiss as it relates to a claim for attorneys' fees under NYDCL § 276-a is likewise denied as to Amaranth Partners, but attorneys' fees can only be recovered if the Trustee establishes actual fraudulent intent of the transferee.

### 2.    Claims For Constructive Fraudulent Conveyance

Counts II, III and IV seek avoidance and recovery of the transfers made to Amaranth Partners as constructive fraudulent conveyances under NYDCL §§ 273,[7] 274[8] and 275.[9]  Like

---

[7]    NYDCL § 273 provides:

>    Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

N.Y. DEBT. & CRED. § 273.

[8]    NYDCL § 274 provides:

>    Conveyances by persons in business: Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as

The Patriot Group, Amaranth Partners was a "net winner" because it received full repayment of principal and interest payments. The Trustee concedes that the repayment of principal to Amaranth Partners discharged an antecedent debt and Amaranth Partners gave "fair equivalent" value for the return of principal because repayment of principal extinguished a claim for restitution against Dreier LLP. (Mem. of Law in Opp. to Amaranth Partners LLC and Amaranth Advisors L.L.C.'s Mot. to Dismiss (ECF Doc. # 24) ("Trustee Mem.") at 20.) As explained in the *Patriot Group* Opinion, the purpose of the NYDCL does not permit the court to "invalidate transfers that were made for fair consideration, at least where no actual intent to hinder, delay or defraud creditors has been shown." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995); *see also Atlanta Shipping Corp.*, 818 F.2d at 249–50 ("In general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor.") (citations omitted). Accordingly, the Court cannot avoid the transfers to the extent of the repayment of principal which extinguished a valid antecedent debt in the form of a common law claim that Amaranth Partners may have had against Dreier LLP.

To the extent of repayments received in excess of principal, at this stage the Trustee need only allege the absence of one of the elements of "fair consideration" defined in NYDCL § 272

---

to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

N.Y. DEBT. & CRED. § 274.

[9]    NYDCL § 275 provides:

> Conveyances by a person about to incur debts: Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

N.Y. DEBT. & CRED. § 275.

to state a claim for constructive fraudulent conveyance under NYDCL §§ 273, 274 and/or 275.

*See Patriot Group* Opinion at section II.E.2.  Under NYDCL § 272(a) "fair consideration" is

given for property or an obligation: "[w]hen in exchange for such property, or obligation, as a

fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is

satisfied."  NYDCL § 272(a).  The Second Circuit has explained the test as follows:

> (1) the transferee must convey property in exchange for the
> transfer, or the transfer must discharge an antecedent debt;
>
> (2) what the transferee exchanges for the transfer must be of "fair
> equivalent" value to the property transferred by the debtor; *and*
>
> (3) the transferee must make the exchange in "good faith"

*See Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 53–54

(2d Cir. 2005) (emphasis added).  Here the Complaint alleges the lack of "fair equivalent," to the

extent of the transfers received in excess of principal.  *See Patriot Group* Opinion at section

II.E.2.  Accordingly, the Trustee has stated a claims under NYDCL §§ 273, 274 and 275 for the

avoidance of transfers received in excess of principal as constructive fraudulent transfers.  The

motions to dismiss Counts II, III and IV are granted with prejudice with respect to the repayment

of principal, and denied as to the payments in excess of principal.

### 3.    Equitable Subordination

Count VI seeks to preemptively equitably subordinate any claim that Amaranth Partners

may file against the Dreier LLP estate.  The Court concludes that this claim is premature.  *See*

*Tronox Inc. v. Andarko Petroleum Corp. (In re Tronox, Inc.)*, 429 B.R. 73, 109 (Bankr. S.D.N.Y.

2010) (stating that "it was premature for Plaintiffs to raise the issue at a time when Defendants

had not yet filed proofs of claim").  The motion to dismiss Count VI is granted without prejudice

to the Trustee's ability to reassert this claim.

18

### C.    Claims Brought Against Amaranth LLC

The Trustee seeks avoidance and recovery of the transfers made during the course of the Note Fraud from Amaranth LLC as a subsequent transferee.  The Trustee's allegations of actual and constructive fraud under the NYDCL against Amaranth LLC, on a theory of subsequent liability, are made applicable through § 550(a)(2) of the Bankruptcy Code which provides that a transfer may be avoided from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(2).  In order to survive a motion to dismiss, the Complaint must allege sufficient facts that Amaranth LLC subsequently received the funds from Amaranth Partners.

The Trustee argues that investing in Amaranth LLC was Amaranth Partners' "*raison d'etre*" and there was a substantial likelihood that the transfers occurred based on the fund structure of the Amaranth entities.  (Compl. ¶ 67.)  In response, Amaranth LLC argues that the Complaint does not pass muster in suggesting that Amaranth LLC received the transfers as a subsequent transferee because the Complaint does not specify any transaction between Amaranth Partners and Amaranth LLC with regard to the transfers from Dreier LLP.  The Court concludes that the Complaint does not contain facts sufficient to show that Amaranth LLC was a subsequent transferee of the transfers made to Amaranth Partners from Dreier LLP.

In order to establish an entity as a subsequent transferee, courts have required that the complaint contain the "necessary vital statistics—the who, when, and how much" of the purported transfers to establish an entity as a subsequent transferee of the funds.  *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007).  The Trustee asserts that similar allegations passed muster in *Picard v. Merkin (In re Bernard L. Madoff Inv. Secs., LLC)*, 440 B.R. 243, 269–70 (Bankr. S.D.N.Y. 2010).  In *Merkin*, the court was asked to decide whether the trustee had met its burden of establishing that the defendants

were subsequent transferees under 11 U.S.C. § 550(a)(2) sufficient to seek avoidance of certain transfers. The court found that the complaint satisfied the Rule 8(a) pleading requirement because it provided "fair notice" to the defendants of the claims against them because certain exhibits attached to the complaint indicated the percentage of fees and commissions that the defendants purported to receive on account of the transfers to an initial transferee. *Id.* Thus, the complaint adequately apprised the defendants—recipients of fees and commissions—of the claims against them because the complaint specified "which transactions are claimed to be fraudulent and why, when they took place, how they were executed and by whom." *Id.* (citing *Stratton Oakmont*, 234 B.R. at 318).

Such is not the case here. The only scintilla of evidence put forth by the Trustee is a bald assertion that "it is likely that Amaranth Partners invested the money DLLP transferred to it pursuant to the Note Fraud to Amaranth LLC." (Compl. ¶ 67.) The Trustee merely asserts that "*[o]n information and belief*, Amaranth Partners transferred its Transfers to Amaranth LLC." (*Id.* ¶ 10) (emphasis added). This case is unlike *Merkin*, where the complaint detailed the predetermined amounts of fees and commissions that were sent to the subsequent transferees as described in a "Fund Offering Memoranda," and attached as an exhibit to the complaint. 440 B.R. at 269–70. The Trustee here makes the assertion that she is seeking to "recover some of the funds that flowed from DLLP to Partners that subsequently fed into Amaranth LLC" without substantiating this allegation. There are no specific facts to back up the allegation that Amaranth LLC received any of the funds that were transferred from Dreier LLP to Amaranth Partners through the fraud, nor is there evidence suggesting that Amaranth LLC received fees and/or commissions from the transfers to Amaranth Partners.

Because the Trustee has not pled facts showing that Amaranth LLC was a subsequent transferee under § 550 of the Bankruptcy Code, the Complaint is hereby dismissed in its entirety against Amaranth LLC with leave to amend the Complaint within thirty days.[10]

### D.    Claims Brought Against Amaranth Advisors

The Trustee seeks to avoid and recover transfers made by Dreier LLP to Amaranth Partners from Amaranth Advisors as party for whose benefit the transfers were made.  (Compl. ¶ 74, 81, 88); *see* 11 U.S.C. § 550(a)(1) ("the trustee may recover, for the benefit of the estate, the property transferred, . . . — (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made").  The crux of the Trustee's argument is that Amaranth Advisors "arranged for the transfers to happen" and directly benefited from the transfers from Dreier LLP to Amaranth Partners.  Amaranth Advisors disagrees, arguing that the Trustee failed to allege how any transfer of funds from Dreier LLP to Amaranth Partners was made for the benefit of Amaranth Advisors.

The Complaint alleges that Amaranth Advisors directed Amaranth Partners' participation in the transactions, and Amaranth Advisors, as investment manager of the Amaranth group, "participated and benefited from each of the transfers from DLLP" to Amaranth Partners. (Compl. ¶ 10.)  As evidence of the purported relationship between Partners and Advisors, the Complaint states that Amaranth Advisors was the agent of Amaranth Partners pursuant to certain

---

[10]     In light of the Court's determination below that the Complaint fails to state a claim against Amaranth Advisors below, the Court need not address the Trustee's argument that there was an agency/principal relationship between Amaranth Advisors and Amaranth LLC sufficient to impute Amaranth Advisors' conduct to Amaranth LLC.  The Court also need not address Amaranth LLC's argument that the "group pleading" was insufficient to put each of the Defendants on notice of the claims against them.

"Advisory Agreements."[11]  (*Id.* ¶ 66.)  The Trustee also points to the transaction documents as

evidence of Amaranth Advisors' involvement in the fraud: Amaranth Advisors signed the

documents on Amaranth Partners' behalf, and wire instructions were address to "Amaranth

Partners LLC, c/o Amaranth Advisors, L.L.C."  (*Id.*  ¶ 64.)

   The quintessential example of an entity for whose benefit a transfer is made is a

guarantor.  *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 89–96 (7th Cir. 1988)

(stating that "we think the minimum requirement of status as a 'transferee' is dominion over the

money or other asset, the right to put the money to one's own purposes").  Even though the

guarantor does not receive any payment, the guarantor is "no longer exposed to liability on its

guarantee because the underlying obligation has been satisfied."  *Enron Creditors Recovery*

*Corp. v. J.P. Morgan Secs., Inc. (In re Enron Creditors Recovery Corp.)*, 407 B.R. 17, 32–

33 (Bankr. S.D.N.Y. 2009), *rev'd on other grounds*, 422 B.R. 423 (S.D.N.Y. 2009).  "The key to

pegging the entity for whose benefit the initial transfer was made has two sides: 1) the entity

must be the intended beneficiary and 2) the intended benefit must originate from the initial

transfer."  *Stratton Oakmont*, 234 B.R. at 314 (citation omitted).  In order to establish liability for

a transferee for whose benefit the transfer was made, "[t]he benefit must be 'direct, ascertainable

and quantifiable' and must correspond to, or be commensurate with, the value of the property

that was transferred."  *In re Enron Creditors Recovery Corp.*, 407 B.R. at 33 (citing *Reily v.*

*Kapila (In re Int'l Mgmt. Assoc.)*, 399 F.3d 1288, 1293 (11th Cir. 2005)).  "Incidental,

unquanitifable, or remote" allegations of benefit are not sufficient.  *Id.*[12]

---

[11]      Amaranth Advisors disputes the existence of an Advisory Agreement and concedes that Amaranth
Advisors was the "Manager" of Amaranth Partners pursuant to Amaranth Partners' LLC Agreement.  (Mem. of Law
in Support of Defs. Amaranth Partners LLC and Amaranth Advisors L.L.C.'s Mot. to Dismiss the First Am. Compl.
(ECF Doc. # 19) at 12.)

[12]      Other courts have dismissed fraudulent transfer claims where the defendant is not the entity for whose
benefit the transfer was made.  *See, e.g., Baker O'Neil Holdings, Inc. v. Ernst & Young LLP*, No. 1:03-CV-0132-

Though it is not inconceivable to think that Amaranth Advisors somehow benefited from the transfers to Amaranth Partners, the Court concludes that the allegations in the Complaint are insufficient to show that Amaranth Advisors was the entity for whose benefit the transfers were made. The fact that Amaranth Advisors was the investment manager of the Amaranth entities does not, in and of itself, support the conclusion that the transfers were made for its benefit. *See Int'l Mgmt. Assoc.*, 399 F.3d at 1293 (stating that the fact that recipient of transfers "attained complete control over the debtors' assets does not give rise to a quantifiable benefit or one bearing the 'necessary correspondence to the value of the property transferred or received'") (citation omitted). In addition, that Amaranth Advisors may have received funds in the form of fees or other later transfers does not establish that the initial transfers were made for their benefit. *See Baker O'Neil Holdings, Inc.*, 2004 WL 771230, at *13 (holding that entities who "might have received a remote benefit as a result of the transfer does not mean that the transfer was made for their benefit" because the benefits would have been "incidental, unquantifiable, and remote"). The fact that Amaranth Advisors executed the transaction documents on behalf of Amaranth Partners is likewise unconvincing because it does not establish that Amaranth Advisors benefited from the underlying transaction.

In sum, the allegations in the Complaint fail to satisfy the requirement that the allegations against Amaranth Advisors suggest a benefit that is "direct, ascertainable and quantifiable."[13] As

---

DFH, 2004 WL 771230, at *13–14 (S.D. Ohio 2004) (rejecting plaintiff's fraudulent transfer claims against accounting firm and employee of accounting firm under section 550(a)(1) because defendants alleged receipt of fees and promise of future engagements from transferor did not constitute "benefit" leading to liability); *Stratton Oakmont*, 234 B.R. at 314–15 (dismissing fraudulent transfer claims against individual who perpetrated fraud because trustee failed to indicate how individual benefited from fraudulent conduct).

[13]     The Trustee also asserts that Amaranth Advisors may also be subject to liability as subsequent transferee. 11 U.S.C. § 550(a)(2). This argument is belied by the fact that the Complaint makes clear that the Trustee seeks liability from Amaranth Advisors on a "benefit" theory, rather than as a subsequent transferee. The Court need not analyze Amaranth Advisors' status as a subsequent transferee because there are no allegations in the Complaint supporting that claim.

was the case with Amaranth LLC, the Court grants Amaranth Advisors' motion to dismiss the

Complaint with leave to amend the Complaint within thirty days.

### III.    CONCLUSION

For the reasons discussed above, the motion to dismiss is granted with leave to amend

within thirty days against Amaranth LLC and Amaranth Advisors.  Consistent with the Court's

holding in the related adversary proceedings, as to Amaranth Partners the motion to dismiss is

denied with regard to the actual fraudulent conveyance claim under NYDCL §§ 276 and 276-a

(Count I) and granted with prejudice with regard to the constructive fraudulent conveyance

claims under NYDCL §§ 273, 274 and 275 (Counts II – IV) to the extent of the repayment of

principal, but denied as to transfers received in excess of principal.  With regard to the claim for

equitable subordination (Count VI), the motion to dismiss is granted and such claim is dismissed

without prejudice.


**IT IS SO ORDERED.**

DATED:      June 16, 2011
            New York, New York


                         **/s/Martin Glenn**
                         MARTIN GLENN
                    United States Bankruptcy Judge